Opinion filed August 23, 2007

















 
 
  
 
 







 
 
  
 
 




Opinion filed August 23, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00105-CV 

                                                    __________

 

                        UNIFORM MANUFACTURING, INC., Appellant

 

                                                             V.

 

         EARL=S APPAREL, INC. AND STANLEY JEANS CORP., Appellees

 



 

                                           On
Appeal from the 3rd  District Court

 

                                                        Houston County, Texas

 

                                                  Trial
Court Cause No. 02-0165

 



 

                                             M
E M O R A N D U M  O P I N I O N         

 

Uniform Manufacturing, Inc. (UMI) filed suit
against Larry Earl Beard d/b/a Earl=s
Apparel, Inc. alleging breach of contract and conversion.  Beard answered that he was not liable in the
capacity in which he was sued.  Earl=s Apparel, Inc. and Stanley Jeans Corp.
filed a plea in intervention alleging counterclaims against UMI.  The trial court entered judgment that UMI
take nothing on its claims and that Stanley Jeans recover $9,460.50 in damages
from UMI.  The trial court further
ordered Stanley Jeans to return to UMI Aall
fabric and manufactured goods the subject of this suit, on hand . . . within
thirty (30) days after the judgment is paid in full.@  UMI appeals. 
We affirm.








In four issues on appeal, UMI argues that the
evidence is factually insufficient to support the trial court=s findings.  Findings of fact in a case tried to the court
have the same force and effect as a jury=s
verdict on questions and are reviewable for legal and factual sufficiency.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). 
In analyzing a factual sufficiency challenge, we must consider and weigh
all of the evidence and determine whether the evidence in support of a finding
is so weak as to be clearly wrong and unjust or whether the finding is so
against the great weight and preponderance of the evidence as to be clearly
wrong and manifestly unjust.   Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 242 (Tex.
2001); Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex.
1986);  In re King=s Estate, 244 S.W.2d 660 (Tex. 1951).   The trier of fact is the sole judge of the
witnesses=
credibility and the weight to be given their testimony.  City of Keller
v. Wilson, 168 S.W.3d 802, 819‑21 (Tex. 2005);  Nat=l Freight, Inc. v. Snyder, 191
S.W.3d 416, 425 (Tex.
App.CEastland
2006, no pet.).  

Stanley Jeans manufactured garments for various
companies.  Earl=s
Apparel was a wholesale company that warehoused and distributed apparel.  Stanley Jeans and Earl=s
Apparel were located in the same office building.  UMI entered into an agreement with Stanley
Jeans in which Stanley Jeans would manufacture garments for UMI with fabric
supplied by UMI.  Beard, president of
Stanley Jeans, testified that, based upon the agreement, UMI would pay for the
work performed by Stanley Jeans and then Stanley Jeans would ship the garments
directly to UMI customers.  Stanley Jeans
charged UMI $4.25 for each pair of jeans it manufactured.  After some time, Stanley Jeans began shipping
the garments to UMI customers before receiving payment from UMI.  UMI would send a purchase order to Stanley
Jeans, Stanley Jeans would manufacture and ship the jeans, and then Stanley
Jeans would send an invoice to UMI.  UMI
was responsible for the shipping charges.    On
January 31, 2002, Beard sent a fax to Aaron Nathan Tucker, president of UMI,
which stated:

I am faxing manifest sheets on order # 263, 278,
295, 319, 356 & 368.  approx 1800
pair.  These are the last orders I will
cut at this price.  The new price per
pair should you decide for me to cut more will be 5.00 per pair.  I will cut up what short flat fold pieces I
can for 5.00 but, no more flat fold goods.  20 yards & up useable fabric only on rolls.   

 








In response, Tucker sent a letter to Beard on February 15, 2002,
which stated that UMI Adeclined
to accept [Stanley Jeans] proposed price increase for current and future orders@ and to Acancel
all outstanding orders . . . and request the immediate and complete transfer of
all fabric owned by [UMI].@


Beard testified that the price increase applied
only to future orders.  At the time Beard
sent the fax, Stanley Jeans was in the process of manufacturing two large
outstanding orders.  Beard testified
that, after receiving the letter from Tucker, Stanley Jeans completed
manufacture on the garments that had already been Acut@ but did not Acut@ any more fabric. Stanley Jeans
completed 2,364 garments at $4.25 each on the outstanding purchase orders and
sent an invoice to UMI for payment.  

Tucker testified that his understanding of the
January 31 fax was that the purchase orders referenced in the fax were the last
orders Stanley Jeans would manufacture at $4.25 and that other orders,
including the two outstanding orders, would be billed at $5.00 each.   Tucker stated that UMI did not want Stanley
Jeans to cut any more garments at the $5.00 price and requested Stanley Jeans
to return all UMI fabric.  Tucker further
testified that, when he sent the February 15 letter, he did not know whether Stanley
Jeans had begun work on outstanding purchase orders.  In his February 15 letter, Tucker requested Aany other outstanding bills for current
work please have these forwarded to my attention immediately.@ 
Tucker testified that UMI suffered damages in the amount of $13,241.78
from Stanley
Jeans=s failure
to return UMI=s
fabric.  

UMI first argues that the evidence is factually
insufficient to support the trial court=s
finding that UMI wrongfully repudiated its contracts with Stanley Jeans when it
cancelled all outstanding purchase orders.  
In the findings of fact, the trial court stated that the January 31 fax
informed UMI of Stanley
Jeans=s intent
to increase its price on future purchase orders.  The trial court also found that Stanley Jeans
had begun working on outstanding purchase orders at the time UMI instructed
Stanley Jeans to stop working on outstanding purchase orders. 








A party repudiates a contract if the party
manifests, by words or actions, a definite and unconditional intention not to
perform the contract according to its terms.  
Builders Sand, Inc. v. Turtur, 678 S.W.2d 115, 120 (Tex. App.CHouston [14th Dist.] 1984, no
writ).  Beard=s
January 31 fax indicates that he would not Acut@ any new orders at $4.25.  Beard testified that the price increase was
only for future orders and that there were two purchase orders in progress at
the time of the fax.  Stanley Jeans
completed the garments in progress on the two outstanding purchase orders for
the agreed-upon $4.25 price.  Tucker
testified that he did not know if any purchase orders were in progress at the
time he sent the February 15 letter cancelling all outstanding orders and that
his intention in sending the letter was for Stanley Jeans to stop working
immediately for UMI.  The trial court=s finding that UMI repudiated the
contract by cancelling all outstanding orders was not so weak as to be clearly
wrong and unjust and is not so against the great weight and preponderance of
the evidence as to be manifestly unjust. 
UMI=s first
issue on appeal is overruled.

Appellant next argues that the evidence is
factually insufficient to support the trial court=s
finding that the actions of Stanley Jeans in response to UMI=s cancellation of outstanding purchase
orders was commercially reasonable.  The
purpose of damages, including the remedies provided under the Texas Business
and Commerce Code, is to place the injured party in as good a position as it
would enjoy if the other party had fully performed under the contract. Lakewood
Pipe of Tex., Inc. v. Conveying Techniques, Inc.,  814 S.W.2d 553, 555 (Tex. App.CHouston [1 Dist.] 1991, no writ); Stewart & Stevenson Servs., Inc. v.
Enserve, Inc., 719 S.W.2d
337, 343 (Tex. App.CHouston [14th Dist.] 1986, writ ref=d n.r.e.). 

Tex. Bus. & Com. Code Ann. ' 2.704(b) (Vernon 1994) states:

Where
the goods are unfinished an aggrieved seller may in the exercise of reasonable
commercial judgment for the purposes of avoiding loss and of effective
realization either complete the manufacture and wholly identify the goods to
the contract or cease manufacture and resell for scrap or salvage value or
proceed in any other reasonable manner.

 

In an action in which the seller seeks damages pursuant to
Section 2.704(b), it is the buyer=s
burden to show that the seller acted unreasonably in either completing
manufacture and reselling or in ceasing manufacture.  Lakewood
Pipe, 814 S.W.2d at 556.  








Beard testified that, after UMI cancelled all
outstanding orders, Stanley Jeans did not Acut@ any more garments.  Stanley Jeans completed the garments that
were in progress.  Beard stated that he
completed the manufacturing process because Stanley Jeans Ahad a lot of money invested in them
already.@  Beard further explained that it would be
unreasonable to ship the partially completed garments to another
manufacturer.  Beard stated, ANo manufacturer wants to get a
partially sewn garment and try to finish it. 
It would be most efficiently done by [Stanley Jeans].@ 
The evidence is factually sufficient to support the trial court=s finding that the actions of Stanley
Jeans were commercially reasonable.  UMI=s second issue on appeal is overruled.

In its fifth issue on appeal, UMI challenges the
trial court=s finding
that Stanley Jeans did not convert any property belonging to UMI.  A conversion occurs when one person makes an
unauthorized, wrongful assumption and exercises dominion and control over the
personal property of another to the exclusion of or inconsistent with the owner=s rights.  Waisath v. Lack=s Stores, Inc., 474 S.W.2d 444, 447
(Tex. 1971); Paschal
v. Great Western Drilling, Ltd., 215 S.W.3d 437 (Tex. App.CEastland 2006, pet. denied).  As previously discussed, the trial court
found that UMI wrongfully repudiated its contracts with Stanley Jeans.  Tex.
Bus. & Com. Code Ann. '
2.703 (Vernon
1994) provides that, when a buyer wrongfully repudiates the contract, the
seller may withhold delivery of the goods. 
Section 2.703 also allows the seller to complete the manufacture as
provided in Section 2.704.  

The evidence shows that Stanley Jeans was in the
process of manufacturing the garments when UMI repudiated the contract.  Stanley Jeans continued manufacture on those
garments that had been Acut.@ 
Section 2.703 allows Stanley Jeans to withhold the goods.  UMI=s
fifth issue on appeal is overruled.

In the
sixth issue on appeal, UMI argues that the evidence is factually insufficient
to support the trial court=s
finding that Stanley Jeans did not breach any contract with UMI.  UMI specifically argues under this issue that
the evidence is sufficient to show Athat
Stanley Jeans was in breach of contract when it failed to return all of UMI@s fabric and was responsible to UMI for
the market price of that fabric.@


The trial court found that Stanley Jeans Adid not breach any contract with [UMI].@ 
As discussed in the first and second issues, the trial court found that
UMI wrongfully repudiated its contracts with Stanley Jeans and that, because of
the repudiation, Stanley Jeans acted in a commercially reasonable manner in
completing the garments in progress. 
After completing the garments in progress, Stanley Jeans did not Acut@
any additional garments for UMI.  The
evidence is factually sufficient to support the trial court=s finding that Stanley Jeans did not
breach any contract with UMI.








The trial court also found that the Aevidence did not establish the amount
of fabric shipped to [Stanley Jeans] from [UMI] and its suppliers.@ 
UMI submitted an inventory report listing fabric that UMI believes
Stanley Jeans has in its possession.  UMI
suppliers shipped the fabric directly to Stanley Jeans.  Beard testified that he counted the contents
of the first shipment of flat fold goods and that the shipment was twenty
percent short.  Beard informed Tucker
that he could not count each shipment. 
Beard testified that he could not accurately determine the amount of
material received.  Tucker testified that
his inventory report would include any material used in completing the garments
on the outstanding purchase orders.  The
trial court=s finding
that UMI did not establish the amount of fabric shipped to Stanley Jeans is not
so weak as to be clearly wrong and unjust and is not so against the great
weight and preponderance of the evidence as to be manifestly unjust.  UMI=s
sixth issue on appeal is overruled.

In the third issue on appeal, UMI contends that
the trial court=s
judgment is not sufficiently definite and certain so as to protect the rights
of UMI.  The judgment states that: 

[Stanley
Jeans] is ordered to return to [UMI] all fabric and manufactured goods the
subject of this suit, on hand, at the expense of [UMI] within thirty (30) days
after the judgment is paid in full.  When
Stanley Jeans returns the fabric and goods, it will also forward to [UMI] a
notarized list of the items returned in as much detail as possible. 

 

A judgment must be sufficiently definite and certain to define
and protect the rights of all litigants, or it should provide a definite means
of ascertaining such rights to the end that ministerial officers can carry the
judgment into execution without ascertainment of facts not therein stated.  Stewart v. USA Custom Paint & Body
Shop, Inc., 870 S.W.2d 18, 20 (Tex.
1994).  

UMI complains that the judgment does not provide
the Aamount@ of fabric to be returned.  The judgment provided that Stanley Jeans
would recover $9,460.50 in damages for the garments completed pursuant to the
outstanding purchase orders.  The trial
court found that UMI did not establish the amount of fabric shipped to Stanley
Jeans.  The judgment requires Stanley
Jeans to return all fabric and manufactured goods in Stanley Jeans=s
possession and to provide an accounting of the fabric and goods returned.  A 
judgment that settles all the legal issues and rights between the
parties is sufficient even though further proceedings may be necessary in the
execution of it or some incidental or dependent matter may still remain to be
settled.  See Hinde v. Hinde, 701
S.W.2d 637, 639 (Tex.
1985).  UMI=s
third issue on appeal is overruled.








The fourth issue on appeal concerns whether the
statute of limitations barred UMI=s
suit  for conversion against Stanley
Jeans.  In its original petition, UMI
filed suit against Larry Earl Beard d/b/a Earl=s
Apparel.  Earl=s
Apparel filed a plea in intervention on October 4, 2002.  In a first amended plea in intervention filed
on January 15, 2003, Stanley Jeans joined as an intervenor.   UMI filed a second amended original petition
on June 14, 2004, naming Stanley Jeans and Earl=s
Apparel as defendants. 

The conclusions of law state that any right to
recover damages for conversion from Stanley Jeans is barred by the statute of
limitations.  Stanley Jeans and Earl=s Apparel are located in the same
office building and both operate in the apparel industry.  Misidentification occurs when two separate
legal entities with similar names actually exist and the plaintiff sues the
wrong one because he is mistaken about which entity is the correct defendant.   Chilkewitz v. Hyson, 22 S.W.3d 825,
828 (Tex.
1999).   In cases of misidentification
where the wrong legal entity is sued, the limitation period may be equitably
tolled if the plaintiff can prove that the proper defendant was not prejudiced
by the mistake in pleading.  Diamond
v. Eighth Ave.
92, L.C., 105 S.W.3d 691, 695 (Tex.
App.CFort
Worth 2003, no pet.).   To be entitled to
equitable tolling, the plaintiff must show that the correct defendant had
notice of the suit, was cognizant of the facts, and was not misled or
disadvantaged by the mistake.  Chilkewitz,
22 S.W.3d at 830; Diamond, 105 S.W.3d at 695.  Stanley Jeans and Earl=s
Apparel are similar entities, but they do not operate under a similar trade
name.  Flour Bluff Indep. Sch. Dist.
v. Bass, 133 S.W.3d 272, 274 (Tex.
2004).  The doctrine of misidentification
does not toll the statute of limitations.

Moreover, the trial court concluded that UMI did
not prove the amount or value of the fabric that was shipped to Stanley
Jeans.  The trial court further concluded
that Stanley Jeans was entitled to withhold delivery of the goods until UMI
paid Stanley Jeans for the work completed after UMI repudiated the
contracts.  Therefore, the trial court
considered UMI=s claim
for conversion against Stanley Jeans.  See
Soto v. Soto, 936 S.W.2d 338, 343 (Tex. App.CEl
Paso 1996, no writ.)  UMI=s fourth issue on appeal is overruled.      

The
judgment of the trial court is affirmed.

 

JIM
R. WRIGHT

August 23, 2007                                                                       CHIEF
JUSTICE

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.